## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cr-00401-GKF[1] |
| | ) | |
| RICKY LEROY WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

### AMENDED OPINION AND ORDER[2]

Before the Court is Defendant's motion for issuance of a document subpoena to Shadow Mountain Behavioral Health System ("Shadow Mountain") under Fed. R. Crim. P. 17(c). Defendant seeks documents relating to mental health treatment received by the alleged victim ("Victim") at Shadow Mountain. The Court finds that the psychotherapist-patient privilege applies in this case, making much of the information sought non-evidentiary. Any assertion that there would be non-privileged, evidentiary material in the possession of Shadow Mountain is speculative and a fishing expedition. The motion will be denied.

### Background

Defendant Ricky Leroy White ("White") was indicted on December 5, 2022, and charged with three counts of abusive sexual contact with a minor in Indian country—two counts involving a child under the age of 12 years. (ECF No. 2.) Count One alleges that

---

[1] While originally filed under 22-cr-00401-GKF, this case has since been reassigned and may be found at 22-cr-00401-RBJ.

[2] This Opinion and Order was originally filed under seal on April 14, 2023. It has been amended to redact any sensitive information prior to public release. The initials of alleged victim at issue in this opinion have been replaced with reference to "Victim." The initials of another victim and the name of a family member have also been removed.

White abused another victim in 2014 and 2015, while Counts Two and Three allege White abused Victim from 2010 through 2017.  (*Id.*)

In a forensic interview, Victim stated she was seen at Shadow Mountain[3] and discussed her allegations with various Shadow Mountain employees, including "a lady," "Mr. Stan," and "Skyler."  (ECF No. 43 at 10.[4])  Victim's guardian also stated she took Victim "to counseling because of and shortly after the allegations against White were presented in October of 2019."  (*Id.* at 10-11.)

White now requests the issuance of a document subpoena to Shadow Mountain, seeking the full gamut of treatment records relating to Victim, unlimited by time, form, or subject.  (ECF No. 37 at 3.)  The Government has consulted with Victim and states her objection to the subpoena.  (ECF No. 56 at 1.)  The Government further argues that a subpoena is not appropriate under Rule 17(c) and asserts psychotherapist-patient privilege on Victim's behalf.  (*Id.*)

## Analysis

### I.     Standard of Review – Rule 17(c)

Under Rule 17(c), a party may subpoena a witness to produce documents, and, with a court order, that subpoena may direct such production occur before trial or before the

---

[3] Shadow Mountain was a mental health treatment facility, with programs including acute inpatient care, residential treatment, an outpatient medication clinic, and an outpatient counseling center.  *See* WayBackMachine, 6/5/18 capture, *available at* https://web.archive.org/web/20180605213432/https://shadowmountainbhs.com/ (last visited Apr. 13, 2023).  The facility closed in 2019.  *See* https://shadowmountainbhs.com/ (last visited Apr. 13, 2023).

[4] While ECF No. 43 was filed *ex parte*, the Court finds these specific facts do not reveal defense strategy, particularly in light of statements made in the adversarial hearing on April 4, 2023.  Thus, there is no extraordinary reason to exclude those facts from this order.

documents are to be offered into evidence.  Fed. R. Crim. P. 17(c)(1).  Where the proposed subpoena seeks confidential or personal information about a victim, the Court normally gives the victim an opportunity to object before the order is entered.  Fed. R. Crim. P. 17(c)(3).  Such notice has been provided in this case.

To satisfy the requirements of Rule 17(c), the moving party must show "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  *United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (footnote omitted).  This generally requires, at a minimum, that the documents sought are relevant and admissible, and that the request be made with specificity.  *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002).

## II.   Defendant's Original Request Lacked Specificity

As initially requested, Defendant's motion appears to be an overbroad fishing expedition, lacking the specificity required by Rule 17 and *Nixon*.  That is, Defendant requests

> all substance abuse, mental health, psychiatric, medical, prescription and counseling records, including, but not limited to, all narrative reports, doctors' and nurses' notes, charts, tests, diagnosis(es), prognosis(es), prescription logs and any [and] all such other documents pertaining to [Victim] . . . regarding the treatment, diagnosis and/or consultation provided to said individual at any time during any of her stays and/or treatment received at [Shadow Mountain], its subsidiaries, agents or assigns.

(ECF No. 37 at 3.)  As noted above, there is an indication that Victim made statements regarding the allegations in this case to certain persons at Shadow Mountain.  But, there is no indication that Victim was treated for substance abuse or had other mental health diagnoses or prescriptions that are in any way relevant to this case.  For example, Defendant is not asserting that Victim's mental health issues affect her ability to understand reality, remember certain events, or testify in the upcoming trial.  *See United States v. Robinson*, 583 F.3d 1265, 1272 (10th Cir. 2009) (noting the significance of a witness's capacity to observe, remember, or narrate at the time of the event at issue and at trial).

At the hearing on April 4, 2023, Defendant's counsel confirmed that what Defendant is truly seeking is communications between Victim and three individuals relating to her allegations against White to determine if they are inconsistent with Victim's current statements.  The Court, therefore, will continue to consider Defendant's request as limited to these statements.

## III.  Even as Limited, Defendant's Request Seeks Inadmissible Information and is Otherwise a Fishing Expedition

As noted above, under Rule 17(c), the requested information must be evidentiary (admissible) and specifically tailored so as not to constitute a fishing expedition.  Because privilege could affect the evidentiary nature of the documents sought, the undersigned will address privilege first.

### A.  The Psychotherapist-Patient Privilege

Claims of privilege are governed by the common law as interpreted by United States courts.  Fed. R. Evid. 501.  In 1996, the Supreme Court addressed whether the common law contains a psychotherapist-patient privilege.  *See Jaffe v. Redmond*, 518

U.S. 1 (1996).  The Court started with the "primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."  *Id.* at 9 (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  But, the Court noted, such exceptions may be justified by a "public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth," *id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980))—that is, when "a privilege protecting confidential communications between a psychotherapist and her patient 'promotes sufficiently important interests to outweigh the need for probative evidence,'" *id.* (quoting *Trammel*, 445 U.S. at 51).  The Supreme Court found that the psychotherapist-patient privilege met these requirements.  *Id.* at 15.

In so ruling, the Supreme Court likened the psychotherapist-patient privilege to that protecting spousal or attorney-client communications.  *Id.* at 10.  The Court further determined that "the likely evidentiary benefit that would result from the denial of the privilege is modest," as without it "much of the desirable evidence . . . is unlikely to come into being" and this "unspoken 'evidence' will therefore serve no greater truth-seeking function than if it had been spoken and privileged."  *Id.* at 11-12.  As a result, the Court held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from disclosure" under Rule 501.  *Id.* at 15.  The Court extended this privilege to licensed psychiatrists, psychologists, and social workers.  *Id.*

The Court further considered—and rejected—any "balancing component" to the privilege that would evaluate the relative importance of the patient's interest in privacy and the evidentiary need for disclosure.  *Id.* at 17.  Citing case law applicable to the

attorney-client privilege, the Court found that such an uncertain privilege would be little better than no privilege at all.  *Id*. at 17-18 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).

### B.     Defendant's Limited Request Appears to Seek Privileged Documents

In this case, as limited at the hearing, Defendant's motion seeks documents that—on their face—would likely be privileged.  Victim went to Shadow Mountain, a mental health treatment facility, for counseling.  There is no basis to believe that her communications at the facility involved anything else, were not confidential, or did not involve licensed health professionals.

There are also no arguments in this case that any known exceptions to the psychotherapist-patient privilege would apply.  As the Tenth Circuit has noted, in *Jaffee*, the Supreme Court did not delineate the full contours of the privilege in a way that would govern all conceivable future questions in the area.  *United States v. Glass*, 133 F.3d 1356, 1356 (10th Cir. 1998).  In *Glass*, the Tenth Circuit determined that the privilege applied in criminal proceedings and recognized a potential exception where the communication contained a serious threat for which disclosure was the only means of averting harm to a person.  *Id*. at 1360.  The Tenth Circuit has also recognized that the psychotherapist-patient privilege—like the attorney-client privilege—can be waived by, for example, placing the patient's medical condition at issue.  *Fisher v. Sw. Bell Tel. Co.*, 361 F. App'x 974, 978 (10th Cir. 2010).  None of these previously recognized exceptions apply in this case.  Victim's mental health has not been placed at issue, and Victim has specifically declined to waive her privilege.

### C.     Defendant's Constitutional Rights Would Not Overcome Privilege in this Case

Although not developed in detail, Defendant has raised his rights under the Sixth Amendment's confrontation and compulsory process clauses and the Fifth Amendment's guarantee of due process.  (ECF No. 43 at 12.)  As noted above, the Supreme Court in *Jaffee* did not address all conceivable future questions regarding the contours of the psychotherapist-patient privilege.  518 U.S. at 18; *see also Swidler & Berlin v. United States*, 524 U.S. 399, 408 n.3 (1998) (not reaching the issue of whether "exceptional circumstances implicating a criminal defendant's constitutional rights might warrant breaching the [attorney-client] privilege").  The Court, therefore, will consider whether Defendant's Fifth and Sixth Amendment rights would overcome the claimed privilege.

### 1.     Confrontation Clause

The Confrontation Clause is not implicated by Defendant's motion.  The Sixth Amendment gives the accused the right "to be confronted with the witnesses against him . . . ."  U.S. Const. amend. VI.  The Confrontation Clause, however, "is not a 'constitutionally compelled rule of pretrial discovery.'"  *United States v. LaVallee*, 439 F.3d 670, 692 (10th Cir. 2006) (quoting *Penn. v. Ritchie*, 480 U.S. 39, 52 (1987) (Powell, J., op.)).[5]  Instead, the right to confrontation is a trial right that prevents improper restrictions on the types of questions defense counsel may ask during cross-examination. *Id.*  As a result, there is no violation of the Confrontation Clause by denying a motion for the production of privileged documents.  *Id.*

---

[5] As other courts have noted, the Tenth Circuit in *LaVallee* cited to Part III-A of the opinion of Justice Powell, which was not joined by Justice Blackmun and, therefore, did not constitute the opinion of the Supreme Court. *See, e.g., United States v. DeLeon*, 426 F. Supp. 3d 878, 915 n.13 (D.N.M. 2019).  However, as the Tenth Circuit has now made this holding in a case that is directly on point, this Court is bound by that ruling.

## 2.     Due Process and Compulsory Process

Due process and compulsory process rights are similarly not implicated in ordinary cases.  The Fifth Amendment guarantees that no person will be deprived of liberty without due process of law, while the Sixth Amendment provides that the accused shall enjoy the right to "compulsory process for obtaining witnesses in his favor . . . ."  U.S. Const. amends. V, VI.  The Supreme Court has found that compulsory process provides no greater protections than those afforded by due process, *Ritchie*, 480 U.S. at 56, and the Tenth Circuit has often considered Fifth and Sixth Amendment rights together when weighing matters like those at issue here, *see United States v. Serrano*, 406 F.3d 1208, 1215 (10th Cir. 2005).[6]  Therefore, for purposes of this opinion, the undersigned will treat the rights as coextensive.

As the Supreme Court has noted, the Compulsory Process Clause does not give an accused the "unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (upholding court's denial of defendant's request to call a previously undisclosed witness).  The Tenth Circuit has similarly found that the "right to compulsory process does not necessarily displace traditional testimonial privileges" and has found no violation of the Sixth Amendment where testimony was excluded for attorney-client

---

[6] "The Fifth . . . and Sixth Amendments concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses.  The Supreme Court's broad reading of the Sixth Amendment's Compulsory Process Clause 'establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.'  Likewise, '[t]he necessary ingredients of the [Fifth and] Fourteenth Amendment[s'] guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony[.]'"  *Serrano*, 406 F.3d at 1215 (citations omitted).

privilege.   *Valdez v. Winans*, 738 F.2d 1087, 1088-90 (10th Cir. 1984) (habeas proceeding); *see also Serrano*, 406 F.3d at 1215 (citing *Valdez* as "holding the Compulsory Process Clause did not override the attorney-client privilege," citing a 7th Circuit case holding it does not override the marital communications privilege, and finding it similarly does not override the Fifth Amendment privilege against self-incrimination).   The psychotherapist-patient privilege is a testimonial privilege that the Supreme Court has recognized as sharing a similar purpose as the attorney-client privilege.  *Jaffee*, 518 U.S. at 10 ("Like the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust.'"); *see also id*. at 17-18 (citing *Upjohn*, 449 U.S. at 393, a case about attorney-client privilege, in refusing to recognize a "balancing component" to the psychotherapist-patient privilege).  Given the Tenth Circuit's refusal to recognize—in the ordinary case—a Sixth Amendment "override" to the attorney-client privilege, the undersigned finds the Tenth Circuit would similarly find that the Compulsory Process Clause is not violated if Defendant is unable to pierce Victim's psychotherapist-patient privilege.

Yet, in *United States v. Robinson*, the Tenth Circuit found that a defendant was entitled to the subpoenaed mental health records of a confidential informant-witness. 583 F.3d 1265, 1267-68 (10th Cir. 2009).  In that case, the Tenth Circuit interpreted *Ritchie* as holding that "due process entitles a criminal defendant to have a witness's potentially privileged records reviewed in camera to determine whether they contain material evidence when the asserted privilege is not absolute but contains exceptions that might allow for disclosure of material evidence."  *Id.* at 1270 (citing *Ritchie*, 480 U.S. at 57-58).  But, the majority found it did not have to address the psychotherapist-patient privilege, because there was "no assertion of privilege in the record . . . ."  *Id.* at 1273 n.4.

Here, there is an assertion of privilege. And, there are no exceptions that could potentially apply, as the Supreme Court has rejected any balancing of Defendant's evidentiary need against Victim's interest in privacy. *See Jaffee*, 518 U.S. at 17. In such circumstances, neither *Ritchie* nor *Robinson* dictates disclosure or in camera review. *Cf. Johnson v. Norris*, 537 F.3d 840, 846 (8th Cir. 2008) (addressing a state's unqualified psychotherapist privilege and stating, "The Supreme Court [in *Ritchie*] expressed no opinion on whether the result would be different if the statute had protected the agency files from disclosure to *anyone*, including law enforcement and judicial personnel.").

Rather, the undersigned is persuaded by the Fourth Circuit's reasoning in *Kinder v. White*, 609 F. App'x 126 (4th Cir. 2015) (unpublished). In *Kinder*, the district court ordered production of the witness's mental health records, reviewed those records in camera, and found that the criminal defendant could obtain the records under the Due Process Clause. *Id.* at 128-29. The Fourth Circuit reversed, finding "this conclusion is demonstrably at odds with both *Jaffee* and basic principles underlying the recognition of testimonial privileges." *Id.* at 130. As the Fourth Circuit noted, all common law testimonial privileges are inherently in derogation of the search for the truth and are only recognized in very limited circumstances where a public good transcends the normally predominant principle of using all rational means for ascertaining that truth. *Id.* at 130-31. As such, the Fourth Circuit concluded that it was an error for the district court to order disclosure of records falling within the protective scope of the psychotherapist privilege. *Id.* at 131.

As such, in ordinary cases like the one here, the undersigned finds that there is no balancing to be done.  If the documents are privileged, they will be inadmissible at trial even in light of a defendant's Fifth and Sixth Amendment rights.[7]

### D.    Defendant's Limited Request is Still a Fishing Expedition

While an unqualified privilege is implicated by Defendant's motion, this opinion really comes down to specificity.  In the end, there are too many logical leaps that must be made to believe there will be relevant, evidentiary material in the possession of Shadow Mountain.  It appears undisputed that Victim has stated that she discussed her allegations against White with "a lady; Mr. Stan; and, Skyler."  (ECF No. 43 at 10.)  From that, Defendant must make a leap to guess that one of those statements was inconsistent with Victim's current description of the alleged abuse.  Then, Defendant must make a leap that such statement was not made as part of Victim's confidential communications to a psychotherapist, when the only known reason for Victim's presence at Shadow Mountain was to receive counseling.  Then, Defendant must hope that, for some reason, Shadow Mountain would have recorded such a non-treatment-related statement in its records.  And finally, Defendant must pray such non-treatment-related statement was preserved in Shadow Mountain's records when the institution was shuttered.

The Court notes that—even in jurisdictions where balancing is done—Defendant's current request would be insufficient to warrant in camera review:

> On one point there appears to be a unanimous consensus.  In sexual-assault and child abuse cases, there is general agreement that a defendant must do more than speculate that, because the complainant has participated in counseling or therapy after the alleged assault, the records in question

---

[7] Because this motion seeks discovery from a third party under Rule 17(c), the Court makes no findings regarding applicability of either Defendant's arguments or the psychotherapist-patient privilege to Fed. R. Crim. P. 16 or *Brady v. Maryland*, 373 U.S. 83 (1963) considerations.

might contain statements about the incident or incidents that are inconsistent with the complainant's testimony at trial.

Clifford S. Fishman, *Defense Access to A Prosecution Witness's Psychotherapy or Counseling Records*, 86 Or. L. Rev. 1, 37 (2007) (footnote omitted); *see also id.* at 38 (noting that this assertion could plausibly be made in every sexual-assault or child molestation case).[8]

Considering the above, Defendant has not met the standards for a Rule 17(c) subpoena for pretrial production of documents.

IT IS THEREFORE ORDERED that the *Defendant's Motion for Issuance of Subpoena Duces Tecum to Shadow Mountain* (ECF No. 37) is DENIED.

ORDERED the 14th day of April, 2023, as amended this 18th day of December, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[8] Professor Fishman theorizes that recognizing a near-absolute privilege, akin to the attorney-client privilege, is the least satisfying approach to resolving the scope of the privilege set forth in *Jaffee. Id.* at 19-21, 24. Instead, he has proposed standards for when a court should conduct an in camera review and when disclosure should occur—"(1) A judge must disclose information to the defense that is otherwise protected by a patient-psychotherapist or similar privilege if the information casts significant doubts upon the truthfulness or accuracy of the witness's testimony. (2) The judge must conduct an in camera review of the records if defense counsel makes a factually specific showing of probable cause that such information will be found in those records." *Id.* at 50-51. The undersigned's finding of a "fishing expedition" would warrant a finding of no "probable cause" for in camera review in this case.